1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GARY HALLFORD,

11              Plaintiff,                    No. CIV S-05-0573 FCD DAD P

12        vs.

13   CALIFORNIA DEPARTMENT OF
     CORRECTIONS, et al.,
14
                Defendant.          FINDINGS AND RECOMMENDATIONS
15   _____/

16              Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief under 42 U.S.C. § 1983.  This matter is before the court on a motion for summary

18   judgment brought on behalf of defendants Nasir, Dickinson, and Brumfield pursuant to Rule 56

19   of the Federal Rules of Civil Procedure.  Plaintiff has filed an opposition to the motion.

20                                   **BACKGROUND**

21              According to plaintiff's allegations[1], he has been practicing Buddhism for the past

22   _____

23        [1]  This case appears to have been proceeding on plaintiff's original complaint throughout
     the course of this litigation.  However, in reviewing the docket, the court notes that plaintiff filed
24   an amended complaint on December 22, 2005, before defendants had filed any responsive
     pleading.  The Federal Rules of Civil Procedure provide that a party may amend his or her
25   pleading "once as a matter of course at any time before a responsive pleading is served."  Fed. R.
     Civ. P. 15(a).  Nonetheless, in substance, plaintiff's amended complaint is virtually identical to
26   his original complaint in that it states the same cognizable claims under the First Amendment

                                           1

twenty years.  One of the fundamental tenets of Buddhism is to refrain from killing.  In line with

Buddhism, in 2004, plaintiff requested a religious diet that did include meat.  Originally, plaintiff

pursued his request through the medical department at CSP-Solano where he was incarcerated.

However, a nurse informed him that he needed to pursue his request through chapel staff.

According to plaintiff, he then submitted several requests for an interview with the chaplain's

office at CSP-Solano but never received a response.  He then pursued an inmate appeal.  Plaintiff

alleges that Lieutenant Miles interviewed him and offered to hand deliver his religious diet

request to the proper person.  After thirty days plaintiff had not received any response to his

request.  Although Lieutenant Miles offered to try to help facilitate his request again, plaintiff

told him the courts could deal with this problem.  Plaintiff notes that after nearly two full years of

submitting additional requests for a religious diet that did include meat, he received his diet card.

Plaintiff claims that the defendants' refusal to provide him with a "no meat card" and respond to

his inmate appeal violated his constitutional rights under the First Amendment.  (Am. Compl. 1-

4, 8-9.)

## PROCEDURAL HISTORY

On October 24, 2005, the court found that plaintiff's original complaint appeared

to state cognizable claims against defendants Nasir, Dickinson, and Brumfield.  After several

extensions of time, defendants filed a motion to dismiss the complaint based on plaintiff's

alleged failure to exhaust administrative remedies prior to filing suit.  On December 21, 2006, the

undersigned issued findings and recommendations, recommending defendants' motion to dismiss

be granted and this action be dismissed without prejudice.  On February 14, 2007, the assigned

district judge adopted the findings and recommendations in full and granted defendants' motion

to dismiss.  Plaintiff appealed, and the Ninth Circuit Court of Appeals vacated the judgment with

against the same defendants.  In this regard, although the parties' briefing may technically be
addressed to plaintiff's original complaint, the arguments apply with equal force to plaintiff's
amended complaint which is the operative pleading in this action.

respect to the court's dismissal of plaintiff's First Amendment claim.  The Ninth Circuit reasoned

that plaintiff had received all available remedies within the administrative grievance process

when prison officials granted his request for a vegetarian meal card at the first formal level of

review, and that he was therefore not required to pursue his appeal further for purposes of

exhaustion of administrative remedies.  On remand, the defendants filed an answer to plaintiff's

complaint and discovery ensued.  As noted above, on May 24, 2010, defendants filed the pending

motion for summary judgment.  Plaintiff has filed an opposition to the motion.

### SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

whatever is before the district court demonstrates that the standard for entry of summary

judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

1    If the moving party meets its initial responsibility, the burden then shifts to the

2  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

3  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

4  establish the existence of this factual dispute, the opposing party may not rely upon the

5  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

6  form of affidavits, and/or admissible discovery material, in support of its contention that the

7  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

8  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

9  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

10  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

11  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

12  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

13  1436 (9th Cir. 1987).

14    In the endeavor to establish the existence of a factual dispute, the opposing party

15  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

16  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

17  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

18  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

19  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

20  committee's note on 1963 amendments).

21    In resolving the summary judgment motion, the court examines the pleadings,

22  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

23  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

24  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

25  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

26  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

4

1  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

2  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

3  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

4  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

5  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

6  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

7                    **OTHER APPLICABLE LEGAL STANDARDS**

8  I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

9              The Civil Rights Act under which this action was filed provides as follows:

10             Every person who, under color of [state law] . . . subjects, or causes
               to be subjected, any citizen of the United States . . . to the

11             deprivation of any rights, privileges, or immunities secured by the
               Constitution . . . shall be liable to the party injured in an action at

12             law, suit in equity, or other proper proceeding for redress.

13  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

14  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

15  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

16  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

17  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

18  omits to perform an act which he is legally required to do that causes the deprivation of which

19  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

20             Moreover, supervisory personnel are generally not liable under § 1983 for the

21  actions of their employees under a theory of respondeat superior and, therefore, when a named

22  defendant holds a supervisorial position, the causal link between him and the claimed

23  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

24  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

25  allegations concerning the involvement of official personnel in civil rights violations are not

26  sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II.  The First Amendment and Free Exercise

"[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." Bell v. Wolfish, 441 U.S. 520, 545 (1979). However, a prisoner's First Amendment rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987).  In particular, a prisoner's constitutional right to free exercise of religion must be balanced against the state's right to limit First Amendment freedoms in order to attain valid penological objectives such as rehabilitation of prisoners, deterrence of crime, and preservation of institutional security.  See O'Lone v. Shabazz, 482 U.S. 342, 348 (1987); Pell v. Procunier, 417 U.S. 817, 822-23 (1974). These competing interests are balanced by applying a "reasonableness test." McElyea, 833 F.2d at 197.  "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. (quoting Turner v. Safley, 482 U.S. 78 (1987)).

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.  Defendants' Statement of Undisputed Facts and Evidence

Defendants' statement of undisputed facts is supported by citations to declarations signed under penalty of perjury by defendants Nasir, Dickinson, and Brumfield.  It is also supported by citations to plaintiff's deposition transcript and copies of plaintiff's inmate appeals.

The evidence submitted by the defendants establishes the following.  Plaintiff professes to be an adherent to the Buddhist faith and believes that a tenet of his faith is that he must not kill.  According to the dictates of his faith, plaintiff believes he must not eat meat.  In February 2003, he transferred to CSP-Solano and worked as a cook.  While working as a cook, he could maintain a vegetarian diet without special authorization from prison administrators, so he did not attempt to apply for an official vegetarian diet for more than a year after initially transferring to CSP-Solano.  (Defs.' SUDF 2-6, Exs. B & C.)

In 2004, in anticipation that he would eventually rotate out of his prison job as a cook, plaintiff began the process of applying for a "no meat card."  He began by trying to get a medical recommendation for a vegetarian diet.  He sent several requests to the prison's medical department, and when he received no response, he spoke to a nurse who told him to apply for a vegetarian diet through the prison chaplaincy program.  (Defs.' SUDF 7-9, Ex. C.)

During the summer of 2004, plaintiff directed his correspondence to the chaplaincy, requesting a vegetarian diet due to his religious beliefs.  He gave forms to other inmates who told him they would take them to the chaplaincy.  He also put forms in the mail system directed to the chaplaincy.  Plaintiff did not know who to specifically direct his requests to, but a Muslim inmate told him that the Muslim Chaplain issued "no meat" cards.  Plaintiff then directed his requests to the "Muslim Chaplain" at CSP-Solano.  Plaintiff did not direct his requests specifically to defendant Nasir because he did not know defendant Nasir's name.  In addition to defendant Nasir, there were other Muslim chaplains who worked at CSP-Solano on a volunteer basis.  (Defs.' SUDF 11-13, Exs. C & D.)

In 2004 and 2005, CSP-Solano had a religious program in place to facilitate inmate religious practices.  The program included providing an alternative vegetarian diet to inmates with a sincere spiritual belief that such a diet was necessary for their religious practice. CSP-Solano had five paid chaplain positions associated with five religious faiths – Protestantism, Catholicism, Judaism, Islam, and Native American beliefs.  The chaplains were responsible for facilitating religious programs for their associated faith group, as well as for faith groups with smaller numbers of inmate participants like Wicca, Buddhism and Voodoo.  Chaplains from the five faith groups were assigned responsibility to facilitate spiritual practices of inmates belonging to the minority religious groups on a rotating basis.  (Defs.' SUDF 19-20, Exs. D & E.)

Defendant Nasir received rotating responsibility to facilitate Buddhist inmate practices during some portions of his tenure at CSP-Solano, but cannot recall whether he or one of the other four chaplains at CSP-Solano was assigned to facilitate Buddhist inmate practices

during the spring and fall of 2004.  If defendant Nasir had received a request for religious

accommodation of a vegetarian diet from an inmate, and that inmate did not belong to one of the

faiths over which he was responsible, he would have promptly forwarded the request to the

chaplain responsible for facilitating inmates belonging to that faith.  If defendant Nasir had

received a request for religious accommodation of a vegetarian diet from an inmate belonging to

one of the faiths over which he was responsible, he would have scheduled a personal interview

with the inmate.  The purpose of the interview would be to determine the inmate's reason for

requesting a special diet and to ensure that the inmate was actually making the request on the

basis of a spiritual belief concerning dietary practices.  Once defendant Nasir had confirmed that

the inmate was making the request on the basis of a sincerely held spiritual belief, he would issue

the inmate a card reflecting that he should receive a vegetarian diet.  Such religious diet cards are

generally valid for one year.  Defendant Nasir does not recall ever receiving any specific

communication from plaintiff requesting assistance to obtain a vegetarian meal or religious

dietary accommodation.  In this regard, defendant Nasir declares that at no time did he interfere

with or thwart plaintiff's efforts to adhere to a vegetarian diet as required by his faith.  (Defs.'

SUDF 21-26, Ex. D.)

In September 2004, plaintiff directed an inquiry to the Appeals Coordinator's

Office and complained that he had not received a response to an inmate appeal that he had filed.

In the inquiry, plaintiff stated that he had filed an inmate appeal six weeks earlier complaining

that the chaplain's office had not provided him with a vegetarian diet card, but he had not yet

received a response to that appeal.  Defendant Dickinson responded to plaintiff by instructing

him to file a separate inmate appeal directed at defendant Brumfield that explained that the

chaplain's office had not provided a response to his initial inmate appeal.  Defendant Dickinson

instructed plaintiff to file this new inmate appeal because he believed it would be the most

effective method for plaintiff to discover the status of his previous appeal.  (Defs.' SUDF 14-15,

Exs. A & F.)

As an Appeals Coordinator, defendant Dickinson's job duties included processing inmate appeals, responding to inmate inquiries concerning the status of appeals, and assisting the Warden's Office in responding to inmate appeals that reached the second formal level of review. At the first formal level of review, inmate appeals are addressed by the specific area of the prison that is the subject of the appeal.  For example, if an inmate files a grievance complaining about procedures in the chapel, staff from the chapel addresses the inmate's concern.  Defendant Dickinson did not have the ability to review an inmate's complaint, conduct an inquiry by interviewing the inmate, or provide a response for the warden's signature until the appeal reached the second formal level of review.  When plaintiff addressed an inquiry to him, defendant Dickinson had no authority to alter the practices of the chapel or to conduct an independent investigation into plaintiff's complaints about the practices of the chapel.  He did not have supervisory authority over custody staff or chaplains.  Defendant Dickinson declares that at no time did he interfere with or thwart plaintiff's efforts to adhere to a vegetarian diet as required by his faith.  (Defs.' SUDF 16-18, Ex. F.)

As the Associate Warden, if defendant Brumfield had been alerted by either an inmate or staff that an inmate was being improperly denied a dietary accommodation at CSP-Solano, she would have taken appropriate steps to correct that omission.  Plaintiff assumed that Lieutenant Miles brought the question of his religious diet request to the attention of defendant Brumfield because Miles said he would hand deliver the request to "his supervisor," and plaintiff believed that defendant Brumfield was Miles' supervisor.  However, defendant Brumfield was not Lieutenant Miles' direct supervisor.  Lieutenant Miles' direct supervisor would have been the custody captain for the facility where Miles worked.  Defendant Brumfield also declares that at no time did she interfere with or thwart plaintiff's efforts to adhere to a vegetarian diet as required by his faith.  (Defs.' SUDF 27-31, Exs. C & E.)

In November 2005, eight months after filing this lawsuit, plaintiff learned that CSP-Solano had issued him a "no meat" card but that he somehow had not received it.  Because

1   CSP-Solano issued such cards for one year, and the card was about to expire when plaintiff

2   discovered its existence, it is likely that it had been issued to plaintiff during the fall of 2004.

3   (Defs.' SUDF 32-33, Exs. C & D.)

4   II.  Defendants' Arguments

5            Defense counsel argues that the defendants are entitled to summary judgment in

6   their favor because the evidence before the court establishes that these defendants did not violate

7   plaintiff's constitutional rights.  Specifically, defense counsel contends that plaintiff cannot

8   establish that each of these defendants were personally involved in any alleged constitutional

9   violation.  Counsel argues that defendant Nasir does not recall plaintiff ever requesting a no meat

10  card, and if he or any other inmate had done so, defendant Nasir would have processed the

11  request.  As to defendant Dickinson, counsel argues that  Dickinson was merely one of the

12  appeals coordinators at CSP-Solano.  Counsel asserts that the evidence establishes that defendant

13  Dickinson responded to plaintiff's initial complaint concerning a lack of response from the

14  chaplain's office by instructing plaintiff to file an inmate appeal and that defendant Dickinson

15  did not have authority to act except within the inmate appeal system.  Counsel also notes that the

16  evidence before the court reflect that plaintiff, however, withdrew his appeal after the first formal

17  level of review.  Finally, as to defendant Brumfield, counsel argues that she was not aware that

18  plaintiff was dissatisfied with his diet.  The only reason plaintiff believed defendant Brumfield

19  was involved in this case was because he simply assumed she was Lieutenant Miles' direct

20  supervisor and that Miles had brought the issue to her attention.  Counsel observes that the

21  evidence now before the court establishes that defendant Brumfield was not Lieutenant Miles'

22  direct supervisor and, in any event, there is no evidence before the court that Lieutenant Miles

23  ever raised plaintiff's issue with anyone.  (Defs.' Mem. of P. & A. at 3, 6-10.)

24           Defense counsel also argues that each of the defendants are entitled to qualified

25  immunity.  Specifically, counsel contends that plaintiff cannot link any of the three named

26  defendants to any wrongdoing in order to establish the claimed constitutional violation.

1    Moreover, even if he could, counsel contends that the defendants acted reasonably and

2    appropriately in accordance with established law.  (Defs.' Mem. of P. & A. at 10-11.)

3    III.  Plaintiff's Opposition

4              In opposition to defendants' motion for summary judgment plaintiff argues that he

5    first met defendant Nasir in the middle of 2004.  Plaintiff contends that whether defendant Nasir

6    remembers their encounter or chooses not to remember it is immaterial.  In addition, plaintiff

7    argues that defendant Dickinson misdirected plaintiff's inmate appeal to Lieutenant Miles and

8    failed to address his complaint regarding his religious diet request in a legitimate manner.

9    Plaintiff contends that defendant Dickinson knew him quite well but acted with personal

10   ambivalence toward any and all of his inmate appeals.  Plaintiff concedes that defendant

11   Brumfield's liability in this case is "minimal" but argues that she was in charge of the chaplains

12   and was responsible for their behavior.  Plaintiff acknowledges that prison officials issued him a

13   "no meat" card at some point but merely stapled it to his personal file.  According to plaintiff,

14   inmates do not have access to these files, so in his view, defendant Nasir or defendant Brumfield

15   purposefully or negligently secured the card in a place that plaintiff could not access it.  Finally,

16   plaintiff argues that the defendants are not entitled to qualified immunity because their violations

17   were of such "dynamic magnitude" that any reasonable person would have known better.  (Pl.'s

18   Opp'n to Defs.' Mot. for Summ. J. at 1-12.)

19                                            **ANALYSIS**

20             The court finds that the defendants have borne the initial burden of demonstrating

21   that there is no genuine issue of material fact with respect to their involvement in plaintiff's

22   alleged constitutional violations.  The evidence before the court establishes the following.  In

23   2004, plaintiff began the process of applying for a "no meat" card by sending several requests to

24   the CSP-Solano medical department.  A nurse told him to apply for a vegetarian diet through the

25   prison chaplaincy program.  In the summer of 2004, plaintiff sent requests to other inmates who

26   told him they would take the requests to the chaplaincy.  He also put requests for a religious diet

11

1   in the mail system directed to the chaplaincy.  Plaintiff did not know who to specifically direct

2   his requests to but learned that the Muslim Chaplain issued "no meat" cards, so he directed his

3   requests to the Muslim Chaplain but not specifically to defendant Nasir.  In fact, plaintiff did not

4   know defendant Nasir's name at the time.  (Defs.' Exs. C & D.)

5           In 2004 and 2005, CSP-Solano had a religious program in place to facilitate

6   inmate religious practice.  The program included providing an alternative vegetarian diet to

7   inmates with a sincere spiritual belief that such a diet was necessary for their religious practice.

8   CSP-Solano had five paid chaplain positions associated with five religious faiths – Protestantism,

9   Catholicism, Judaism, Islam, and Native American beliefs.  The chaplains were responsible for

10  facilitating religious programs for their associated faith group, as well as for faiths with smaller

11  numbers of participants like Wicca, Buddhism, and Voodoo.  Chaplains from the five faith

12  groups were assigned responsibility to facilitate spiritual practices of inmates belonging to the

13  minority religious groups on a rotating basis.  (Defs.' Exs. D & E.)

14          Defendant Nasir received rotating responsibility to facilitate Buddhist inmate

15  practices during some portions of his tenure at CSP-Solano, but he cannot recall whether he or

16  one of the other four chaplains at CSP-Solano was assigned to facilitate Buddhist inmate

17  practices during the spring and fall of 2004.  However, if defendant Nasir had received a request

18  for religious accommodation of a vegetarian diet from an inmate, and that inmate did not belong

19  to one of the faiths over which he was responsible, he would have promptly forwarded the

20  request to the chaplain responsible for facilitating inmates belonging to that faith.  Moreover, if

21  defendant Nasir had received a request for religious accommodation of a vegetarian diet from an

22  inmate belonging to one of the faiths over which he was responsible, he would have scheduled

23  the inmate for a personal interview.  The purpose of that interview would have been to determine

24  plaintiff's reason for requesting a special diet and to ensure that he was actually making the

25  request on the basis of a spiritual belief concerning dietary practices.  Once defendant Nasir had

26  confirmed that an inmate was actually making the request on the basis of a sincerely held

spiritual belief, he would issue the inmate a card reflecting that he should receive a vegetarian diet.  Defendant Nasir does not recall ever receiving any specific communication from plaintiff requesting assistance to obtain a vegetarian meal or religious dietary accommodation.  (Defs.' Ex. D.)

In September of 2004, plaintiff directed an inquiry to the Appeals Coordinator's Office, complaining that he had not received a response to an inmate appeal that he had filed.  In the inquiry, plaintiff stated that he had filed an inmate appeal six weeks earlier complaining that the chaplain's office had not provided him with a "no meat" card pursuant to his request. Defendant Dickinson responded to plaintiff's inquiry by instructing him to file a separate inmate appeal directed to defendant Brumfield that explained that the chaplain's office had not provided a response to plaintiff's initial inmate appeal form.  Defendant Dickinson believed plaintiff would be most likely to discover the status of his previous appeal by following that course of action.  As an Appeals Coordinator, defendant Dickinson's job duties included processing inmate appeals, responding to inmate inquiries concerning the status of appeals, and assisting the Warden's Office in responding to inmate appeals that reached the second formal level of review. However, defendant Dickinson did not have the ability to review an inmate's complaint, conduct an inquiry by interviewing the inmate, or provide a response for the warden's signature until the appeal reached the second formal level of review.  When plaintiff addressed his inquiry to him, defendant Dickinson had no authority to alter the practices of the chapel or to conduct an independent investigation into plaintiff's complaints about the practices of the chapel.  (Defs.' Exs. A & F.)

As the Associate Warden, if defendant Brumfield had been alerted by either an inmate or staff that an inmate was being improperly denied a dietary accommodation at CSP-Solano, she would have taken appropriate steps to correct that omission.  Plaintiff assumed that Lieutenant Miles brought the question of his religious diet request to the attention of defendant Brumfield because Miles said he would hand deliver the request to "his supervisor," and plaintiff

13

1  believed that defendant Brumfield was Miles' supervisor.  However, defendant Brumfield was

2  not Lieutenant Miles' direct supervisor at the time.  Rather, Miles' direct supervisor would have

3  been the custody captain for the facility where Miles worked.  (Defs.' Exs. C & E.)

4          In November 2005, eight months after filing this lawsuit, plaintiff learned that

5  CSP-Solano had in fact issued him a "no meat" card but that he had somehow never received it.

6  Because CSP-Solano issued "no meat" cards for one year, and the card was about to expire when

7  plaintiff finally discovered its existence, it is likely that the card had been issued to plaintiff

8  during the fall of 2004.  Defendants Nasir, Dickinson and Brumfield state that they never

9  interfered with or thwart plaintiff's efforts to adhere to a vegetarian diet as required by his faith.

10  (Defs.' Exs. C & D.)

11         It is well established that there can be no liability under 42 U.S.C. § 1983 unless

12  there is some affirmative link or connection between a defendant's actions and the claimed

13  deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir.

14  1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Thus, the burden shifts to plaintiff

15  to establish the existence of a genuine issue of material fact precluding summary judgment in

16  defendants' favor.  As noted above, to demonstrate a genuine issue, the opposing party "must do

17  more than simply show that there is some metaphysical doubt as to the material facts . . . .

18  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

19  party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

20         Here, the court has considered plaintiff's opposition to the pending motion for

21  summary judgement and his amended complaint.  On defendants' motion for summary judgment,

22  the court is required to believe plaintiff's evidence and draw all reasonable inferences from the

23  facts before the court in plaintiff's favor.  However, drawing all reasonable inferences in

24  plaintiff's favor, the court concludes that plaintiff has not submitted sufficient evidence to create

25  a genuine issue of material fact with respect to his constitutional claims.  See Fed. R. Civ. P.

26  56(e) ("When a motion for summary judgment is properly made and supported, an opposing

1   party may not rely merely on allegations or denials in its own pleading . . . .”).

2          First, as to defendant Nasir, plaintiff argues that he first met Nasir in the middle of

3   2004.  According to plaintiff's deposition testimony, he spotted defendant Nasir with three black

4   men heading towards the chapel.  Plaintiff asked him if he was Imam Nasir and defendant Nasir

5   responded yes.  Plaintiff then told him he was trying to get a "no meat" card, and defendant Nasir

6   responded by telling plaintiff to go to church.  According to plaintiff, that was the extent of their

7   conversation.  (Pl.'s Dep. at 43.)  Plaintiff also asserts that he put three, half-sheet interview

8   request forms to the "Muslim Chaplain" in the inter-prison mailbox but never received a

9   response to any of them.  At the time he submitted the requests, however, plaintiff acknowledges

10  that he did not know defendant Nasir was the Muslim Chaplain at CSP-Solano.  (Id. at 30-31 &

11  43.)

12         Even assuming all of plaintiff's contentions to be true, the evidence he has

13  submitted to the court in connection with th pending summary judgment motion fails to show

14  that defendant Nasir interfered with plaintiff's ability to obtain a religious diet card in violation

15  of the First Amendment.  Specifically, during plaintiff's only encounter with defendant Nasir, the

16  defendant merely instructed plaintiff to go to church to get a religious diet card.  There is simply

17  no evidence before the court that defendant Nasir denied plaintiff a "no meat" card or otherwise

18  interfered with plaintiff getting one.  Similarly, although plaintiff may have submitted interview

19  request forms generally to the "Muslim Chaplain" at CSP-Solano on three separate occasions,

20  plaintiff has not submitted any evidence to show that defendant Nasir actually received or

21  reviewed these generally directed request forms.  In this regard, plaintiff has simply failed to

22  point to any evidence before the court which suggests that defendant Nasir was personally

23  involved with plaintiff's inability to get a religious diet card.

24         As to defendant Dickinson, plaintiff argues that Dickinson misdirected plaintiff's

25  inmate appeal to Lieutenant Miles instead of communicating directly with defendant Brumfield

26  on his behalf.  According to plaintiff's deposition testimony, he believes that defendant

1   Dickinson is responsible for plaintiff not receiving a religious diet card because, in plaintiff's

2   opinion, Dickinson should have facilitated his requests as an appeals coordinator.  (Pl.'s Dep. at

3   46-47.)

4            Again, even assuming all of plaintiff's contentions to be true, the evidence

5   submitted by plaintiff in opposition to the pending summary judgment motion fails to show that

6   defendant Dickinson interfered with plaintiff's ability to obtain a religious diet card in violation

7   of plaintiff's First Amendment rights.  As an initial matter, "inmates lack a separate

8   constitutional entitlement to a specific prison grievance procedure."  Ramirez v. Galaza, 334

9   F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

10  Moreover, plaintiff has not provided the court with any evidence demonstrating that defendant

11  Dickinson failed to properly process plaintiff's inmate appeal nor any evidence suggesting that

12  defendant Dickinson had the authority to do more than he did on plaintiff's behalf.  Rather, it is

13  undisputed that defendant Dickinson did not have the ability to review inmate complaints,

14  conduct an inquiry by interviewing inmates, or provide responses for the warden's signature until

15  an inmate appeal reached the second formal level of review.  It is also undisputed that defendant

16  Dickinson had no authority to alter the practices of the chapel or to conduct an independent

17  investigation into plaintiff's complaints about the practices of the chapel with respect to the

18  issuance of religious diet cards.  Finally, the court notes that Lieutenant Miles interviewed

19  plaintiff at the first formal level of review of the appeals process.  The evidence before the court

20  establishes that plaintiff was satisfied with Lieutenant Miles' response to his complaint and

21  withdrew his inmate appeal as a result.  (Defs.' Ex. A.)  Although plaintiff may have encountered

22  subsequent difficulties in obtaining his religious diet card, the appeals process appears to have

23  worked to plaintiff's satisfaction at the time.  Thus, plaintiff has simply not submitted any

24  evidence showing that defendant Dickinson was personally involved with plaintiff's inability to

25  get a "no meat" card during the period of time at issue.

26  /////

1    Finally, as to defendant Brumfield, plaintiff merely argues that she was in charge

2  of chaplains and was responsible for their behavior.  In addition, according to his deposition

3  testimony, plaintiff filled out an inmate appeal complaining that he had not received a religious

4  diet card, and after speaking with Lieutenant Miles, Lieutenant Miles said that he would hand-

5  deliver it to his supervisor, defendant Brumfield.  (Pl.'s Dep. at 30-34, 38 & 47.)

6    Once more, even assuming all of these contentions by plaintiff to be true, the

7  evidence submitted by plaintiff in connection with the pending motion fails to demonstrate that

8  defendant Brumfield interfered in any way with his ability to obtain a religious diet card in

9  violation of his rights under the First Amendment.  Specifically, as plaintiff himself

10  acknowledges, he never asked defendant Brumfield for a religious diet card, and defendant

11  Brumfield never denied him such a card.  In fact, plaintiff concedes that he has never met or

12  spoken personally with defendant Brumfield.  (Pl.'s Dep. at 45.)  Moreover, even if defendant

13  Brumfield supervised Lieutenant Miles, plaintiff has not submitted any evidence to show that

14  Lieutenant Miles delivered a copy of plaintiff's inmate appeal to defendant Brumfield or that she

15  otherwise even knew of plaintiff's complaint regarding his inability to get a religious diet.

16  Finally, even if defendant Brumfield supervised the chaplains at CSP-Solano, as noted above,

17  supervisory personnel are generally not liable under § 1983 for the actions of their employees

18  under a theory of respondeat superior.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979);

19  Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Section 1983 requires that there be an

20  actual connection or link between the actions of the defendants and the deprivation alleged to

21  have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658

22  (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  Here, plaintiff has simply not submitted any

23  evidence suggesting that defendant Brumfield was personally involved with plaintiff's inability

24  to get a religious diet card.

25    As observed at the outset above, summary judgment should be entered, after

26  adequate time for discovery and upon motion, against a party who fails to make a showing

17

1  sufficient to establish the existence of an element essential to that party's case, and on which that

2  party will bear the burden of proof at trial.  See Celotex Corp., 477 U.S. at 322.  In this regard, "a

3  complete failure of proof concerning an essential element of the nonmoving party's case

4  necessarily renders all other facts immaterial."  Id.  See also Addisu v. Fred Meyer, 198 F.3d

5  1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable . . . does

6  not present a genuine issue of material fact" but rather there "must be enough doubt for a

7  'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.")

8  The moving defendants have satisfied their initial burden of coming forward with evidence

9  demonstrating the absence of a genuine issue of material fact with respect to the claims against

10  them.[2]  Plaintiff has completely failed to respond with any proof from which a reasonable trier of

11  fact could find in his favor with respect to the three moving defendants.

12      Accordingly, for the reasons set forth above, the court concludes that defendants Nasir,

13  Dickinson, and Brumfield are entitled to summary judgment in their favor with respect to

14  plaintiff's First Amendment claims against them.[3]

15  /////

16  /////

17  /////

18

19  [2]  The undersigned notes that counsel for defendants has certainly done no more than required. Notably, counsel has not presented evidence as to whether plaintiff's many requests for

20  a religious diet were received in the chaplains' office or by any other prison official and, if so, who received them and what actions they took in response thereto.  Moreover, defense counsel

21  has submitted no evidence identifying who attached the "no meat" card issued to plaintiff in the fall of 2004 to his inmate file rather than providing it to him after prison officials apparently

22  authorized a religious diet for plaintiff.  Defense counsel failed to present such evidence to the court despite the fact that  it would presumably be available to and readily attainable by prison

23  officials.  Had plaintiff requested such information in discovery, perhaps he could have identified those responsible for denying him a religious diet for a significant period of time after he was

24  authorized to receive one by prison officials.  However, this case was filed in 2005 and the time for the conducting of discovery has long since passed.  See Scheduling Order filed Sept. 9, 2009

25  (Doc. No. 55) at 6.

26  [3]  In light of the recommendation set forth herein the court need not address defendants' qualified immunity argument.

18

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Defendants' May 24, 2010 motion for summary judgment (Doc. No. 74) be granted; and

2.  This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 20, 2011.

_Dale A. Drozd_
_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
hall0573.57